IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DEMARCUS WILLIAMSON,<br><br>Plaintiff,<br><br>vs.<br><br>PREMIER CREDIT UNION,<br><br>Defendant. | 4:23-cv-00039-SHL-WPK<br><br><br>**ORDER GRANTING<br>MOTION TO DISMISS** |

## I.  INTRODUCTION

Plaintiff DeMarcus Williamson, proceeding pro se, brings Fair Credit Reporting Act ("FCRA") claims against Defendant Premier Credit Union ("Premier") for allegedly failing to conduct a reasonable investigation of certain tradelines after Williamson disputed the accuracy of those tradelines with consumer reporting agencies. (ECF 3.) Premier moves to dismiss, arguing, *inter alia*, that Williamson's pleading fails to identify any inaccuracies, a threshold requirement for FCRA relief. (ECF 8-1.) The Court agrees and GRANTS Premier's Motion to Dismiss.

## II.  BACKGROUND

The Court construes the facts in the light most favorable to Williamson, the nonmoving party. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). On or about September 12, 2022, Williamson obtained his credit report from three consumer reporting agencies: Equifax, Experian and TransUnion. (ECF 3, ¶ 8.) Each report contained two trade lines from Premier, which Williamson alleges were "false, inaccurate and unverifiable" in some unspecified way. (Id., ¶¶ 9–12.) "On or about June 2022, July 2022, October 2022, November 2022, December 2022, and January 2023," Williamson contacted each of Equifax, Experian and TransUnion to "dispute the completeness and accuracy of the information furnished by [Premier]." (Id., ¶ 13.) Each credit reporting agency then conducted a reinvestigation of the Premier trade lines they reported, as required when a consumer disputes the accuracy of an item on a credit report. (Id., ¶¶ 14–16); *see* 15 U.S.C. § 1681i(a)(1).

Williamson received TransUnion's reinvestigation results first, in July 2022, which he alleges showed Premier "falsely verified the information but didn't give account level documentation on the late payments and the account in general i.e., contracts, applications etc."

(ECF 3, ¶ 14.) He received Experian's reinvestigation results in September 2022, which he says similarly showed Premier "falsely verified the information but didn't give account level documentation on the late payments and the account in general i.e., contracts, applications etc." (Id., ¶ 16.) He received Equifax's results in October 2022, which, again, he says showed Premier "falsely verified the information but didn't give account level documentation on the late payments and the account in general i.e., contracts, applications etc." (Id., ¶ 15.)

Williamson alleges that each credit reporting agency communicated his dispute to Premier, which then failed to disclose back to each credit reporting agency that the "debt was disputed." (Id., ¶¶ 7, 17.) Williamson alleges that as a result of the inaccurate reporting of these trade lines on his credit reports, on or about September 12, 2022, he "was denied credit from Apple, Pentagon Federal Credit Union and FNBO." (Id., ¶ 8.) He further alleges that the "publishing of such inaccurate and incomplete information has severely damaged [his] personal and credit reputation" and "caused severe humiliation, emotional distress, mental anguish, denial of credit, actual money and damage to his FICO scores." (Id., ¶ 18.)

Williamson filed his Complaint against Premier on January 30, 2023 (ECF 1), which, as later amended, asserts five violations of the FCRA (ECF 3). Categorically, he makes three claims: (1) Premier failed to conduct reasonable investigations of the disputed trade lines, failed to produce proper documentation to each credit reporting agency during those investigations, and failed to mark the debt as disputed, in violation of 15 U.S.C. §§ 1681s-2(b)(1)(A–B) (Counts 1 and 2); (2) Premier failed to "report accurate information to the [credit] reporting agencies after [his] dispute," in violation of 15 U.S.C. §§ 1681s-2(b)(1)(C–D) (Counts 3 and 4); and (3) Premier failed to modify and/or correctly report the disputed trade lines after receiving the credit reporting agencies' notifications of Williamson's claims, in violation of 15 U.S.C. 1681s-2(b)(1)(E) (Count 5).

Premier moves to dismiss Williamson's Amended Complaint under Fed. R. Civ. P. 12(b)(6), arguing there is no private right of action against furnishers for reporting inaccurate information to credit reporting agencies and, to the extent Williamson's Amended Complaint alleges violations of the FCRA during the reinvestigation process, it fails for not identifying: (1) the allegedly false information contained in the credit reports; (2) the allegedly false information Premier provided to the credit reporting agencies; and (3) the causal connection between Premier's acts and Williamson's alleged denial of credit and other damages. (ECF 8-1.)

### III. LEGAL ANALYSIS

*A.   Legal Standards and Background.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). In determining plausibility, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012) (per curiam). The Court is not obligated to accept legal conclusions, however, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 955 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

A pro se complaint "must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Rinehart v. Weitzell*, 964 F.3d 684, 687 (8th Cir. 2020) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)). The Court will afford Williamson the benefit of less stringent review, although it is debatable whether a more stringent standard should apply to him given his substantial experience in federal court as a pro se litigant. Since December 2021, Williamson has filed at least four Fair Debt Collection Act ("FDCA") cases and eight FCRA cases in this Court, with varying degrees of success.[1] He also appears to have a connection with

---

[1] *See Moore v. H&R Accts., Inc.*, 4:21-cv-00408-SMR-SHL (S.D. Iowa Dec. 30, 2021) (FDCA case closed on June 24, 2022, following stipulated dismissal with prejudice); *Moore v. LVNV Funding, LLC*, 4:22-cv-00006-SHL-HCA (S.D. Iowa Jan. 6, 2022) (FDCA case closed on August 22, 2022, after the Court granted defendant's motion to dismiss); *Speller v. Portfolio Recovery Assocs., LLC*, 4:22-cv-00007-SHL-HCA (S.D. Iowa Jan. 6, 2022) (FDCA case closed on August 22, 2022, after the Court granted defendants' motion to dismiss); *Mosley v. Automated Accts. Mgmt. Servs., LLC*, 4:22-cv-00012-SMR-HCA (S.D. Iowa Jan. 18, 2022) (FDCA case closed on August 12, 2022, following settlement); *Williamson v. Experian Info. Sols., Inc.*, 4:22-cv-00253-SHL-HCA (S.D. Iowa Aug. 5, 2022) (FCRA case closed on February 6, 2023, after the Court granted defendant's motion to dismiss); *Williamson v. Equifax Info. Servs., LLC*, 4:22-cv-00254-SHL-HCA (S.D. Iowa Aug. 5, 2022) (FCRA case closed on October 5, 2022, following voluntary dismissal with prejudice); *Williamson v. Trans Union LLC*, 4:22-cv-00255-SHL-HCA (S.D. Iowa Aug. 5, 2022) (FCRA case closed Jan. 13, 2023, following settlement); *Williamson v. The Receivable Mgmt. Servs. LLC*, 4:22-cv-00304-SHL-HCA (S.D. Iowa Sept. 13, 2022) (FCRA case closed December 5, 2022, following dismissal with prejudice); *Williamson v. Equifax Info. Servs., LLC*, 4:22-cv-00340-SHL-HCA (S.D. Iowa Oct. 6, 2022) (FCRA case closed October 21, 2022, following dismissal with prejudice); *Williamson v. Equifax Info. Servs., LLC*, 4:22-cv-00378-SHL-HCA (S.D. Iowa Nov. 7, 2022) (FCRA case closed on January 26, 2023, following voluntary dismissal with prejudice); *Williamson v. Maximus Educ., LLC*, 4:23-cv-00032-SHL-WPK (S.D. Iowa Jan. 25, 2023) (ongoing FCRA case).

Chantierra Moore, who was a co-plaintiff in two[2] of Williamson's FDCA cases and brought four[3] suits of her own. Regardless, in an abundance of caution, the Court will give Williamson the benefit of the "liberal construction" afforded to pro se litigants; meaning, "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

Williamson's claims all sound in the FCRA. The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Congress enacted the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy" of information on a consumer's credit report, 15 U.S.C. § 1681e(b), and conduct a "reinvestigation" of such information if a consumer disputes the accuracy of any reported item, *id.*, § 1681i(a)(1). The FCRA similarly requires furnishers of information like Premier to provide accurate information to credit reporting agencies, *id.* § 1681s-2(a), and conduct an investigation into the accuracy of any reported item once a consumer reporting agency notifies the furnisher that a consumer disputes it, *id.*, § 1681s-2(b).

Premier is correct that the FCRA does not provide consumers with a private cause of action against furnishers for supplying inaccurate information to credit reporting agencies in violation of § 1681s-2(a). *See Gordon v. Greenpoint Credit*, 266 F. Supp. 2d 1007, 1010 (S.D. Iowa 2003). But Williamson does not seek relief for Premier's allegedly inaccurate reporting to Experian, Equifax, and TransUnion. (ECF 3.) Rather, his claims arise out of the FCRA's separate

---

[2] *See Moore v. H&R Accts., Inc.*, 4:21-cv-00408-SMR-SHL (S.D. Iowa Dec. 30, 2021) (FDCA case closed on June 24, 2022, following stipulated dismissal with prejudice); *Moore v. LVNV Funding, LLC*, 4:22-cv-00006-SHL-HCA (S.D. Iowa Jan. 6, 2022) (FDCA case closed on August 22, 2022, after Court granted defendant's motion to dismiss).
[3] *See Moore v. Automated Accts. Mgmt. Servs., LLC*, 4:21-cv-00379-SMR-SBJ (S.D. Iowa Dec. 6, 2021) (FDCA case closed January 3, 2022, following settlement); *Moore v. Equifax Info. Servs., LLC*, 4:22-cv-00262-SHL-HCA (S.D. Iowa Aug. 15, 2022) (FCRA case closed December 7, 2022, following settlement); *Moore v. Trans Union LLC*, 4:22-cv-00355-SHL-HCA (S.D. Iowa Oct. 18, 2022) (FCRA case closed December 5, 2022, following voluntary dismissal with prejudice); *Moore v. Experian Info. Sols., Inc.*, 4:22-cv-00354-SHL-HCA (S.D. Iowa Oct. 18, 2022) (FCRA case closed February 6, 2023, after Court granted defendant's motion to dismiss).

requirement that furnishers conduct a reasonable investigation into the accuracy of an item after being notified of a consumer dispute by a consumer reporting agency. (Id.) The FCRA provides consumers with a private cause of action against furnishers that willfully or negligently fail to conduct such a reasonable investigation. *See Gordon*, 266 F. Supp. 2d at 1010.

In bringing a cause of action for an unreasonable investigation, the consumer must start by alleging that the furnisher provided inaccurate information to the consumer reporting agency. *See Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) (identifying inaccurate or incomplete information is a "threshold" requirement for relief under § 1681s–2(b) of the FCRA); *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) (without a "prima facie showing" of inaccuracy in the furnisher's reporting, "then the reasonableness of the investigation is not in play"); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37–38 (1st Cir. 2010) (absent "a showing of actual inaccuracy," a consumer's claim against a furnisher "fails as a matter of law"). Inaccuracy is a threshold requirement because, unless a consumer can show a furnisher's investigation *could have* uncovered facts showing its reporting was incorrect, the reasonableness of its investigation does not matter. *See Felts*, 893 F.3d at 1313. In other words, the reasonableness of an investigation is irrelevant if the information was accurate all along. *See id.*; *cf. DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) ("At the very least, it is difficult to see how a plaintiff could prevail on a claim for damages under § 1681i without a showing that the disputed information disclosed by the credit agency was, in fact, inaccurate.").

The consumer must plead and prove inaccurate information. *See Chiang*, 595 F.3d at 37; *cf. Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 n.9 (11th Cir. 1991) ("[T]he burden of proving that a particular report is inaccurate is part of the plaintiff's case and not an affirmative defense for a defendant credit reporting agency.") Information is inaccurate when it is incorrect or "through omission [] creates a materially misleading impression." *Hrebal v. Seterus, Inc.*, 598 B.R. 252, 266 (D. Minn.) (gathering cases), *on reconsideration sub nom. Hrebal v. Nationstar Mortg. LLC*, 385 F. Supp. 3d 849 (D. Minn. 2019). "[A] furnisher may create a materially misleading impression when, having received notice of a consumer's potentially meritorious dispute, the furnisher subsequently fails to report that the claim is disputed." *Id.* (cleaned up). "This is so because failing to report a bona fide dispute could materially alter how the reported debt is understood." *Id.* (cleaned up).

B.     *Williamson Has Not Stated a Plausible Claim for Relief.*

Williamson's Amended Complaint generically alleges that his credit reports contained "false and materially misleading information" and that Premier, specifically, furnished "false, inaccurate and unverifiable" information to the crediting reporting agencies. (ECF 3, ¶¶ 8, 12.) He fails, however, to identify what the false information was. Rather, at best, he simply provides the numbers associated with each trade line on each report. (Id., ¶¶ 9–11.) Williamson also did not attach copies of his credit reports or the investigation results to the Amended Complaint, leaving the Court unable to try to deduce the inaccuracy on its own. Williamson's summary of his communications to each credit reporting agency also does provide the missing detail, as he says only that he contacted each agency to "dispute the completeness and accuracy" of the information furnished by Premier. (Id., ¶ 13.) Similarly, he merely says that Premier "falsely verified the information but didn't give account level documentation on the late payments and the account in general i.e., contracts, applications etc." (Id., ¶¶ 14–16.) In short, Williamson never answers the crucial question: *what information was it*?

The failure to identify the "false and materially misleading information" is fatal in and of itself to the viability of Williamson's Amended Complaint. *See Leones v. Rushmore Loan Mgmt. Servs. LLC*, 749 F. App'x 897, 902–03 (11th Cir. 2018) (affirming dismissal as a matter of law where plaintiff could not "prove a facially apparent factual inaccuracy at the pleadings stage" of § 1681s-2(b) case). The Amended Complaint also fails to state a claim because Williamson never plausibly alleges the materiality of the unspecified information. "A credit report does not become inaccurate whenever there is an omission, but only when an omission renders the report misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 568 (5th Cir. 2020) (internal quotation marks and citation omitted); *cf. Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) ("[N]ot all inaccuracies cause harm or present any material risk of harm.").

Williamson does, to be sure, allege that he was "denied credit from Apple, Pentagon Federal Credit Union and FNBO" due to Premier's conduct, which he also says "severely damaged" his personal and credit reputation and caused "damage to his FICO scores." (ECF 3, ¶¶ 8, 18.) These allegations hint at materiality, but, without identifying the underlying inaccurate information, the Court cannot evaluate the allegations' plausibility. Williamson must do more to

satisfy Fed. R. Civ. P. 12(b)(6). *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Williamson's response to Premier's Motion to Dismiss does not cure the problem. It largely provides additional background legal information about the FCRA, which is not in dispute. He also asserts that if Premier had marked the trade lines as disputed, "Experian, Equifax and TransUnion would have reported the debt as disputed and would not have considered the debt when determining [his] credit scores as most scoring models will ignore a disputed account for scoring purposes." (ECF 9, ¶ 25.) This is not necessarily true; when a furnisher conducts an investigation and verifies the accuracy of the reported information, it is not required to denote the account as "disputed" anyway. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016) ("Section 1681s–2(b) contemplates three potential ending points to reinvestigation: verification of accuracy, a determination of inaccuracy or incompleteness, or a determination that the information 'cannot be verified.'"). In other words, once accuracy is verified, the FCRA does not require the furnisher to continue to mark the account as disputed in perpetuity. Otherwise, consumers could continually dispute accurate accounts on their credit reports to have them removed from the reporting agency's scoring model and inflate their scores. (*See* ECF 9, ¶¶ 25–26.)

In any event, whether the information should be reported as "disputed" still depends in the first instance on whether it is inaccurate. This, in turn, requires the plaintiff to identify the inaccurate information. Williamson's First Amended Complaint never does this, and thus he has not stated a plausible claim for relief.

### IV. CONCLUSION

The Court GRANTS Premier's Motion to Dismiss Williamson's Amended Complaint (ECF 8) without prejudice. Premier's Motion to Strike Williamson's Response (ECF 14) is DENIED AS MOOT. The Clerk of Court shall enter judgment for Premier.

IT IS SO ORDERED.

Dated: April 28, 2023

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE